NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0628n.06

No. 17-5696

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Nov 13, 2017
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| JUNIOR ALDRIDGE, | ) |
| | ) |
| Petitioner-Appellant, | ) |
| | ) |
| v. | ) |
| | ) |
| SHAWN PHILLIPS, Warden, | ) |
| | ) |
| Respondent-Appellee. | ) |
| | ) |
| | ) |

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TENNESSEE

BEFORE:    DAUGHTREY, MOORE, and SUTTON, Circuit Judges.

MARTHA CRAIG DAUGHTREY, Circuit Judge.    Petitioner Junior Aldridge was convicted in Tennessee state court of first-degree murder and especially aggravated robbery and was sentenced to concurrent prison terms of life and 40 years, respectively. His efforts to overturn those convictions and sentences in state court were unsuccessful, leading him to file a 28 U.S.C. § 2254 petition for a writ of habeas corpus in federal district court. Aldridge now concedes that he failed to file his habeas corpus petition within the statutorily mandated one-year statute-of-limitations period. Nevertheless, he argues that the district court erred in dismissing that petition as untimely because evidence that was not introduced at his trial would establish his actual innocence of the charges against him and thus serve to toll the applicable statute of limitations. We disagree and affirm the judgment of the district court.

**Limitations Period for Filing of Habeas Corpus Petition**

Pursuant to the explicit language of 28 U.S.C. § 2244(d)(1)(A):

A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from . . . the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.

That one-year limitations period can be extended, however. In fact, 28 U.S.C. § 2244(d)(2) states, "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."

Following Aldridge's unsuccessful efforts to overturn his convictions on direct review, he did in fact pursue avenues for post-conviction relief. Even discounting the time taken to resolve those collateral challenges, however, he still failed to file his habeas corpus petition within the statutorily mandated time period, a fact that Aldridge now concedes. Citing *McQuiggin v. Perkins*, 133 S. Ct. 1924 (2013), Aldridge nevertheless contends "that actual innocence, if proved, serves as a gateway through which a petitioner may pass" in order to avoid the impediment placed in his way by the expiration of a statute of limitations. *Id.* at 1928.

Both the United States Supreme Court and this court have emphasized that the actual-innocence gateway is extremely narrow. *See, e.g.*, *Schlup v. Delo*, 513 U.S. 298, 321 (1995); *Souter v. Jones*, 395 F.3d 577, 590 (6th Cir. 2005). Indeed, it is not enough that a petitioner shows that a reasonable doubt exists as to his guilt in light of new evidence; rather, "the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Schlup*, 513 U.S. at 327. That "new evidence" need not be newly discovered evidence, however, but simply may be "evidence that was not presented to the

fact-finder during trial, i.e., newly presented evidence." *Cleveland v. Bradshaw*, 693 F.3d 626, 633 (6th Cir. 2012) (citing *Souter*, 395 F.3d at 595 n.9). In this appeal, Aldridge claims that just such evidence exists so that equitable tolling should have led the district court to consider his late-filed habeas corpus petition.

**Aldridge's Claim of Actual Innocence**

The "new" evidence that Aldridge believes would lead any reasonable juror to exonerate him of the crimes for which he was convicted is a statement given by the murder victim, Travis Clariett, to a police officer two days before Clariett's death. In that statement, Clariett claimed:

> At approximately 8:30 p.m., I walked outside for break, that's when I saw my white Cadillac Sedan DeVille, missing. I have reason to believe that Renarda Irving stole my car, because she has been threatening me and she had opportunity, Monday. She came to my job and threatening [*sic*] to do something bad to me.

Although the statement in isolation does nothing to establish Aldridge's innocence, the petitioner argues that had the statement been offered into evidence before the jury—rather than excluded by the trial judge as hearsay—it, in conjunction with other evidence, would have led the jurors to point the finger of guilt at Renarda Irving, rather than at him. To determine whether such an assertion has any validity, it is necessary to recap briefly the evidence that *was* introduced before the jury at trial.

Although Renarda Irving intimated that she and Travis Clariett were married to each other, it is clear that no official marriage ceremony had been conducted and that the two were only girlfriend and boyfriend. Nevertheless, Clariett claimed Irving's daughter as his own dependent for income tax purposes even though Clariett clearly was not the father. The purpose of the ruse was to maximize Clariett's tax refund, in exchange for which Clariett would give Irving $2,500.

On March 10, 2005, both Irving and Clariett were at Clariett's mother's home in Barton, Mississippi, just south of the Tennessee-Mississippi state line. Presumably, Irving was anxious to receive the $2,500 from Clariett, and Clariett wished to retrieve his Cadillac from the location in Memphis where it had been taken previously. Thus, on that day, Clariett, carrying $2,500 in cash with him, rode with his nephew, Jeremy Hull, to Irving's Memphis residence while Irving drove her own vehicle and followed Clariett and Hull. After Clariett and Hull and Irving all arrived at Irving's residence, Irving left briefly with Junior Aldridge to retrieve Clariett's Cadillac from another location.

When Aldridge and Irving returned, Aldridge parked Clariett's Cadillac directly behind the Nissan Altima in which Clariett and Hull had travelled from Mississippi. Hull then observed Aldridge entering Irving's home while Clariett got into the driver's seat of his Cadillac and Irving sat in the front passenger seat of that vehicle. While in the Cadillac, Clariett began counting out the money to be given to Irving as part of their income tax scam. He had counted out and transferred only $500 of that amount when Aldridge emerged from Irving's home with a plastic bag, approached the rear passenger window of the Cadillac, and directed Clariett to "[l]et down the window." When Clariett complied with the request, Aldridge hit Irving in the head with a gun he had pulled from the bag, demanded, "Bitch, give me the money," and fired one shot at Clariett, killing him. Hull, viewing the shooting by looking in his rear-view mirror, then saw Aldridge flee from the scene and heard Irving "hollering and crying," before Hull drove away from the area in fear.

At Aldridge's trial, Hull identified Aldridge as the shooter and testified that he saw only Aldridge, not Irving, with a weapon on the day of the murder. Irving offered the same account

-4-

of the occurrences and added that Aldridge, wearing a white t-shirt, jeans, and a black jacket, ran away with approximately $2,000 of the money Clariett had brought to give Irving.

As stated earlier, Aldridge attempted at trial to deflect guilt from himself by seeking to admit into evidence a statement made by Clariett two days before the murder. In that statement made to a police officer, the victim related that Irving had threatened him and surmised that she had taken his car from the parking lot at his place of employment. Even had the statement been presented to the jury, however, we cannot say that, in light of that evidence, no reasonable juror would have voted to convict Aldridge of Clariett's murder. Despite Irving's alleged threats and supposed car theft, absolutely no evidence adduced at trial placed a gun in Irving's possession, and no witness testified that Irving—or anyone other than Aldridge—fired the shot that killed Clariett. To the contrary, the sworn testimony of Jeremy Hull corroborated Irving's claim that Aldridge approached the victim's car, pulled a gun from a plastic bag he was carrying, fired the fatal shot from near the rear passenger window of Clariett's Cadillac, and fled from the scene. Because a reasonable juror could conclude that Aldridge was guilty of murder and especially aggravated robbery beyond a reasonable doubt, the petitioner cannot establish his actual innocence such that he should be allowed to proceed with his habeas corpus claim despite his untimely filing of the petition.

## CONCLUSION

In the absence of a showing of actual innocence, Aldridge cannot establish his right to equitable tolling of 28 U.S.C. § 2244(d)'s statute-of-limitations period. Accordingly, we AFFIRM the judgment of the district court dismissing Aldridge's habeas corpus petition as untimely.