[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-15551
Non-Argument Calendar
_____

D.C. Docket No. 1:09-cr-21010-JEM-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CARLOS RODRIGUEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(December 15, 2016)

Before MARTIN, JORDAN, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Carlos Rodriguez appeals the denial of his motion for a new trial based on newly discovered evidence. After careful review, we affirm the district court's denial of Rodriguez's motion as time-barred.

I.

This Court outlined the facts underlying Rodriguez's convictions in a previous opinion affirming his convictions on direct appeal. See United States v. Esquenazi, 752 F.3d 912 (11th Cir. 2014). We summarize those facts here to the extent necessary to decide this appeal. Rodriguez was the minority owner and executive vice president of operations of Terra Telecommunications Corp. ("Terra"), a Florida company that bought phone time from foreign vendors for resale in the United States. Id. at 917. In 2001, Terra bought phone time from Telecommunications D'Haiti ("Teleco"), a telephone company owned by the Haitian government. Id. at 917–18. Terra owed Teleco over $400,000 by October 2001. Id. at 918. Antonio Perez (Terra's comptroller) testified at trial that Joel Esquenazi (Terra's president and chief executive officer) asked him to contact Teleco to either negotiate a deal reducing Terra's obligations or offer a side payment. Id. at 917–18. Robert Antoine (Teleco's director of international relations at the time) agreed to accept side payments in exchange for reducing Terra's debt and "suggested that Terra disguise the payments by making them to sham companies." Id. Perez went on to testify that he informed Esquenazi,

2

Rodriguez, and James Dickey (Terra's general counsel) of the side-payment scheme during a meeting, and that both Dickey and Rodriguez congratulated him on a "job well done." Id. 917–18.

In November 2001, Terra began funneling payments to Antoine through J.D. Locator, an otherwise insolvent company owned by Antoine's friend, Juan Diaz. Id. at 918–19. Rodriguez and Esquenazi authorized payments to J.D. Locator using check requests, which allowed Terra to write checks without invoices. Id. at 919. Diaz testified that these payments were not for legitimate services and that the money was actually disbursed to Antoine. Id. Then, in 2003, Antoine was replaced by Jean Duperval. Terra continued to make side payments to Duperval through Telecom Consulting Services Corporation ("TCSC"), a shell company Esquenazi helped Duperval create. Id.

A grand jury indicted Rodriguez on twenty-one counts. Count 1 charged Rodriguez with conspiracy to violate the Foreign Corrupt Practices Act ("FCPA") and commit wire fraud by bribing foreign officials Antoine and Duperval, all in violation of 18 U.S.C. § 371. Counts 2 through 8 charged seven substantive violations of the FCPA. Each corresponded to a different payment made to Duperval. Count 9 charged a conspiracy to launder money by concealing and disguising the bribes through intermediary shell corporations in violation of 18 U.S.C. § 1956. And Counts 10 through 21 charged substantive money laundering

3

violations of 18 U.S.C. § 1956(a)(1)(B)(i) involving payments to Duperval hidden through payments to TCSC.  In August 2011, a jury convicted Rodriguez of all charges.  The district court sentenced Rodriguez to 84-months imprisonment.

This Court affirmed Rodriguez's convictions on direct appeal.  See Esquenazi, 752 F.3d at 917.  Relevant to this appeal, Rodriguez raised a challenge in his direct appeal to a deliberate-ignorance jury instruction.  He argued the evidence at trial showed he did not know about Terra's illegal activity.  Id. at 930.  This Court held that the district court erred in including the jury instruction but that any error was harmless because of the "overwhelming evidence" that Rodriguez had actual knowledge he was authorizing unlawful payments.  Id. at 931.  In describing this "overwhelming evidence," we noted Perez's testimony that Rodriguez had congratulated him on a job well done when informed of the deal, and we highlighted the fact that Rodriguez had authorized many payments to J.D. Locator and TCSC.  Id.

On May 18, 2015, Rodriguez filed a motion for a new trial based on newly discovered evidence pursuant to Federal Rule of Criminal Procedure 33.  The new evidence was a sworn and notarized affidavit from Dickey stating that Dickey never attended a meeting at Terra or anywhere else in which bribes were discussed.  Rodriguez argued the affidavit demonstrated the evidence the government relied on to establish the knowledge elements of his convictions did not exist.  Thus,

4

there was a reasonable likelihood that the affidavit would have impacted the jury's judgment. Rodriguez also argued Dickey's affidavit showed he was actually innocent because it refuted the claim he was present at meetings where bribes were discussed. He asserted he was entitled to a new trial based on his claim of actual innocence.

The district court denied Rodriguez's motion for a new trial because it was time-barred and because the new evidence went only to impeaching a witness. Rodriguez filed a motion for reconsideration, which the district court denied. This appeal followed.

## II.

Rodriguez argues on appeal that his motion for new trial is not time-barred. His argument has two parts. First, he asserts his motion is timely because it contains a claim of actual innocence. Second, he argues equitable tolling should apply to extend the time for filing his motion. We review the denial of a motion for a new trial for an abuse of discretion. United States v. Isaacson, 752 F.3d 1291, 1308 (11th Cir. 2014). We also review the denial of a motion for reconsideration for an abuse of discretion. Richardson v. Johnson, 598 F.3d 734, 740 (11th Cir. 2010) (per curiam).

The Federal Rules of Criminal Procedure permit the district court to grant a new trial if the interests of justice require one. Fed. R. Crim. P. 33(a). A

5

defendant has three years after the verdict to file a Rule 33 motion if it is based on newly discovered evidence. Fed. R. Crim. P. 33(b)(1). Rodriguez did not file his motion until May 2015, almost four years after his August 2011 convictions. He therefore does not fall within the three-year window provided by Rule 33. The Supreme Court has told us that Rule 33's time limitations are not jurisdictional, but it has also said that they are "admittedly inflexible" because of Federal Rule of Criminal Procedure 45(b)'s "insistent demand for a definite end to proceedings." Eberhart v. United States, 546 U.S. 12, 19, 126 S. Ct. 403, 407 (2005) (per curiam).

Rodriguez's argument that his motion is timely because it contains a claim of actual innocence cannot overcome the Rule 33 hurdle. Assuming the actual-innocence exception applies to Rule 33 time limitations, a movant can invoke the exception only by showing that, in light of the new evidence, "it is more likely than not that no reasonable juror would have convicted [him]." McQuiggin v. Perkins, 569 U.S. ___, 133 S. Ct. 1924, 1933 (2013) (quotation omitted). Rodriguez has not made such a showing. Rodriguez says the new affidavit invalidated Perez's trial testimony about Perez informing Rodriguez and others about the bribery scheme during a meeting, and Rodriguez's congratulations of Perez on a job well done. He argues Perez's testimony was the only evidence of his knowledge of the

bribery scheme, so if Dickey's testimony had been presented at trial, it is likely that no reasonable juror would have convicted him on any count.

But Perez's testimony was not the only evidence of Rodriguez's knowledge. As this Court recognized on direct appeal, there was "overwhelming evidence" that Rodriguez knew he was authorizing unlawful payments. See Esquenazi, 752 F.3d at 931. Aside from Perez's testimony there was: (1) evidence that Rodriguez had authorized many payments from Terra to J.D. Locator and TCSC, see id.; (2) testimony that Rodriguez paid close attention to Terra's finances and took the "unusual" step of authorizing payments to J.D. Locator and TCSC without backup documentation or invoices; and (3) testimony that Rodriguez instructed a Terra accountant to use Teleco's vendor code on check requests for payments to J.D. Locator, which suggests Rodriguez attempted to conceal the true nature of the payments in Terra's books. Because Perez's testimony was only one piece of the "overwhelming evidence" showing Rodriguez knew about the bribery scheme, Rodriguez has not shown a sufficient likelihood that no reasonable juror would have convicted him in light of his new evidence. He therefore cannot take advantage of any actual-innocence exception to Rule 33's time bar.

Neither can Rodriguez's equitable tolling argument get him past the time bar. Rodriguez is entitled to equitable tolling only if he shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance

7

stood in his way and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649, 130 S. Ct. 2549, 2562 (2010) (quotation omitted). In his briefs, Rodriguez says he pursued an affidavit from Dickey for a year and was prevented from getting it earlier because Dickey was concerned about incriminating himself. Even taking these allegations as true, they are not enough to show that Rodriguez diligently pursued the affidavit. At the time of trial, Rodriguez knew who Dickey was—Dickey's affidavit refers to a meeting for which Rodriguez was present. And if Perez had in fact presented false testimony about the meeting at trial, Rodriguez would have known then to look for ways to rebut or impeach Perez's testimony. However, Rodriguez says he tried to get an affidavit from Dickey for a year before he eventually got it. This means he did not start pursuing the affidavit until more than two years after he was convicted. On this record, Rodriguez has not met his burden of showing he exercised reasonable diligence in obtaining Dickey's affidavit. He is therefore not entitled to equitable tolling.

## III.

Rodriguez also argues the district court erred by (1) concluding his newly discovered evidence was merely impeaching; (2) denying his motion for a new trial even though he had a valid claim based on Giglio v. United States, 405 U.S. 150, 92 S. Ct. 763 (1972); (3) denying his motion for a new trial without conducting an evidentiary hearing; and (4) denying his motion for reconsideration.

Because we affirm the district court's denial of Rodriguez's motion for a new trial as time-barred, we need not and do not rule on these claims.

**AFFIRMED.**