J-A03032-19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA,   :    IN THE SUPERIOR COURT OF
                                      :            PENNSYLVANIA
                Appellee       :
                                        :
          v.                    :
                                        :
JOSEPH FRANKENBERRY,          :
                                        :
               Appellant      :        No. 778 WDA 2018

Appeal from the PCRA Order May 11, 2018
in the Court of Common Pleas of Fayette County
Criminal Division at No(s): CP-26-CR-0000158 ½-1981
CP-26-CR-0000158-1981

BEFORE:  SHOGAN, J., OLSON, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:          **FILED APRIL 26, 2019**

     Joseph Frankenberry (Appellant) appeals from the May 11, 2018 order

dismissing his fourth petition filed under the Post Conviction Relief Act

(PCRA), 42 Pa.C.S. §§ 9541-9546.  We affirm.

A.

     We offer the following background.

> On August 19, 1981, a jury found Appellant guilty of first[-
> ]degree murder and criminal conspiracy in connection with a
> November 14, 1980 killing for hire in Uniontown.[1]  Judgment of

---

[1] This Court previously summarized the underlying facts as follows.

> The victim's wife, Phoebe Tomasek[,] engaged in an affair with
> Elmer Younkin.  Tomasek and Younkin decided to kill the victim.
> Initially, they met with Ben Wujs to have the victim killed, but
> Wujs referred the job to Appellant.  Tomasek and Younkin then
> met with Appellant and Charles Huey to arrange the killing in

*(Footnote Continued Next Page)*

---

\* Retired Senior Judge assigned to the Superior Court.

sentence was imposed on November 15, 1982, with Appellant receiving an aggregate term of life plus five to ten years' imprisonment. On August 7, 1984, this Court affirmed the judgment of sentence and on January 10, 1985, our Supreme Court denied appeal. *Commonwealth v. Frankenberry*, 481 A.2d 1372 (Pa. Super. 1984) (unpublished memorandum).

On October 14, 1988, Appellant filed his first PCRA petition. The petition was denied on November 4, 1988, and a motion for reconsideration was denied on November 17, 1988. Appellant appealed the November 17, 1988 decision, but the appeal was later quashed as untimely. Appellant filed a second PCRA petition on November 18, 1994. Counsel was appointed and following a hearing, the petition was denied on January 20, 1995. This Court subsequently affirmed the denial. *Commonwealth v. Frankenberry*, 671 A.2d 768 (Pa. Super. 1995) (unpublished memorandum), *appeal denied*, 674 A.2d 1067 (Pa. 1996). On April 12, 2005, Appellant filed [a third] PCRA petition. [T]he petition was dismissed as untimely [filed].

*Commonwealth v. Frankenberry*, 897 A.2d 516 (Pa. Super. 2006) (unpublished memorandum at 1-2) (footnote omitted). This Court affirmed the dismissal of Appellant's third PCRA petition, and our Supreme Court denied Appellant's petition for allowance of appeal. *Id.*, *appeal denied*, 901

*(Footnote Continued)* ——————————

such a way that Tomasek and Younkin could establish alibis while Huey and Appellant killed the victim.

On November 14, 1980, Huey and Appellant drove to the victim's driveway and waited for him to come home. When he did, Appellant walked over to the victim and shot him four times, killing him. Subsequently, Huey informed the police of the events, was granted immunity, and testified at trial as an eyewitness. Younkin and Appellant were tried jointly and convicted.

*Commonwealth v. Frankenberry*, 671 A.2d 768 (Pa. Super. 1995) (unpublished memorandum at 2).

A.2d 496 (Pa. 2006). Additionally, Appellant unsuccessfully sought relief through the federal *habeas* system and the Freedom of Information Act.

Appellant filed the instant, counselled PCRA petition on October 6, 2016, raising several **Brady**[2] claims. PCRA Petition, 10/6/2016, at 17-18. As alleged in Appellant's October 6, 2016 petition, he sought assistance with pursuing a PCRA petition from the law firm of Leech Tishman in 2012. Attorney Steve Toprani took on Appellant's case and hired James Baranowski to investigate Appellant's alleged claims of judicial misconduct pertaining to pre-trial rulings and granting immunity to Huey. **Id.** at 10. Appellant's claims evolved following the conclusion of Baranowski's investigation, and Appellant ultimately presented four bases for overcoming the PCRA's time-bar, including via the newly-discovered facts and governmental interference exceptions.[3] **Id.** at 8-9.

---

[2] **Brady v. Maryland**, 373 U.S. 83 (1963). "Under **Brady**[] and subsequent decisional law, a prosecutor has an obligation to disclose all exculpatory information material to the guilt or punishment of an accused, including evidence of an impeachment nature." **Commonwealth v. Spotz**, 47 A.3d 63, 84 (Pa. 2012).

[3] These exceptions provide as follows.

> (1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:
>
> > (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or

*(Footnote Continued Next Page)*

First, Appellant argued that the Commonwealth failed to disclose tape-recorded conversations between Younkin and Tomasek (Younkin-Tomasek tapes), wherein they discussed hiring Huey to kill the victims. These phone conversations were allegedly recorded by Younkin. Appellant claimed that he learned of the tapes on August 17, 2016, when he received Baranowski's report. *Id.* at 9; Brief in Support of PCRA Petition, 12/22/2016, at 14.

Second, Appellant claimed that he provided Attorney Toprani, sometime between 2012 and 2016, with an FBI ballistics report. However, Attorney Toprani failed to file a PCRA petition based on the ballistics report within 60 days of receipt of that report. Amended PCRA Petition, 5/16/2017, at 12. Thereafter, Attorney Toprani left Leech Tishman. The firm subsequently notified Appellant that it could no longer represent him because the PCRA's 60-day timeframe would have passed for any facts discovered while Attorney Toprani was working on Appellant's case, and because of a conflict of interest with another client. PCRA Petition,

*(Footnote Continued)* ————————

laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence…

\*\*\*

42 Pa.C.S. § 9545(b)(1)(i-ii).

10/6/2016, at 11-12; Attachment C (Leech Tishman Letter, 3/8/2016, at 1-2).

Third, Appellant pleaded that he learned in August 2006 of evidence proving that Huey met with the FBI prior to January 24, 1981, whereas Huey's trial testimony was that he had not met with the FBI until approximately February 5, 1981. PCRA Petition, 10/6/2016, at 15.

Finally, Appellant argued that the PCRA's jurisdictional time-bar was unconstitutional as applied to him because, according to him, he "is factually innocent, and governmental misconduct precluded [Appellant] from learning of the **Brady** evidence discussed herein." **Id.** at 16.

Appellant filed a brief in support of his PCRA petition on December 22, 2016, and an amended PCRA petition on May 16, 2017. Also on December 22, 2016, Appellant sought recusal of the entire Fayette County bench "based on allegations of prosecutorial misconduct that related to current Senior Judge Gerald Solomon while he prosecuted the underlying cases." Motion for Recusal, 12/22/2016, at 1. Ultimately, the Fayette County bench recused itself and transferred the case to Judge David Klementik from Somerset County. **See** Order, 5/31/2017 (Judge Leskinen recusing); Order, 6/2/2017 (Judge Vernon recusing); Order, 6/5/2017 (Judge Cordaro recusing); Order, 6/7/2017 (President Judge Wagner recusing); Order, 6/9/2017 (Judge George recusing); Order, 6/12/2017 (Judge Solomon recusing); Order, 6/13/2017 (Judge Capuzzi recusing).

The PCRA court held oral argument on October 24, 2017.  Notably, the PCRA court did not explicitly "find the petitions untimely or time-barred, but rather was willing to grant the relief if the evidence was sufficient."[4] Pa.R.A.P. 1925(a) Opinion, 8/7/2018, at 2 (unnumbered).  On February 1, 2018, the PCRA court held an evidentiary hearing on Appellant's claim regarding suppression of the Younkin-Tomasek tapes.  During that hearing, Appellant presented the testimony of Phoebe Tomasek, Attorney Steve Toprani, Attorney Vincent J. Roskovensky, II, Attorney Steve Irwin, Marshall Woodley, James Baranowski, Peggy Broadwater, and Montgomery Goodwin.  Appellant also testified.  On May 11, 2018, the PCRA court denied Appellant's petition by order and memorandum.

B.

This timely-filed appeal followed.[5]  On appeal, Appellant raises seven issues for our review.  **See** Appellant's Brief at 5-6.  Before reaching the merits of Appellant's claims, we must first determine whether Appellant has timely filed his PCRA petition, as neither this Court nor the PCRA court has

---

[4] This was error.  As discussed *infra*, the PCRA's time-bar is jurisdictional. Therefore, if the petition was filed untimely and did not meet an exception to to the time-bar, it did not matter whether the evidence was sufficient because the PCRA court would have been without jurisdiction to entertain the merits of any raised claims.  However, this Court "may affirm the decision of the [PCRA] court if there is any basis on the record to support the [PCRA] court's action[.]" **Commonwealth v. Wiley**, 966 A.2d 1153, 1157 (Pa. Super. 2009) (citation omitted).

[5] Both Appellant and the PCRA court complied with Pa.R.A.P. 1925.

- 6 -

jurisdiction to address the merits of an untimely-filed petition. ***Commonwealth v. Leggett***, 16 A.3d 1144, 1145 (Pa. Super. 2011).

Any PCRA petition, including second and subsequent petitions, must either (1) be filed within one year of the judgment of sentence becoming final, or (2) plead and prove a timeliness exception. 42 Pa.C.S. § 9545(b). Furthermore, the petition "shall be filed within 60 days of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2) (effective 1995-2018).[6]

"For purposes of [the PCRA], a judgment [of sentence] becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S. § 9545(b)(3). Here, Appellant's sentence became final in the 1980s following the conclusion of direct review. As such, Appellant's October 6, 2016 petition is facially untimely and he was required to plead and prove an exception to the timeliness requirements.

As discussed *supra*, Appellant attempted to plead the newly-discovered facts and governmental interference exceptions. PCRA Petition, 10/6/2016, at 8-9. Appellant presented three "facts" as the bases for these exceptions:

---

[6] This subsection was recently amended for claims arising one year prior to the effective date of December 24, 2018, to extend the time for filing from 60 days of the date the claim could have been presented to one year. However, this amendment does not apply to Appellant's October 6, 2016 PCRA petition.

(1) the Younkin-Tomasek tapes; (2) the FBI ballistics report; and (3) Huey's FBI contact date. *Id.* at 9, 11-12, 15.

To qualify for the newly-discovered facts exception to the PCRA's time-bar, "a petitioner need only establish that the facts upon which the claim is based were unknown to him and could not have been ascertained by the exercise of due diligence." *Commonwealth v. Burton*, 158 A.3d 618, 629 (Pa. 2017) (some citations omitted). "Due diligence demands that the petitioner take reasonable steps to protect his own interests. A petitioner must explain why he could not have obtained the new fact(s) earlier with the exercise of due diligence." *Commonwealth v. Monaco*, 996 A.2d 1076, 1080 (Pa. Super. 2010) (citations omitted). "The focus of the exception is on [the] newly discovered **facts***, not on a newly discovered or newly willing source for previously known facts." *Commonwealth v. Lambert*, 57 A.3d 645, 648–49 (Pa. Super. 2012) (citation omitted; emphasis in original). With regard to a *Brady* violation, "[t]he newly-discovered evidence exception requires that the facts upon which the *Brady* claim is predicated were not previously known to the petitioner and could not have been ascertained through due diligence." *Commonwealth v. Hawkins*, 953 A.2d 1248, 1253 (Pa. 2006).

"Although a *Brady* violation may fall within the governmental interference exception, the petitioner must plead and prove that the failure to previously raise these claims was the result of interference by

government officials, and that the information could not have been obtained earlier with the exercise of due diligence." **Commonwealth v. Smith**, 194 A.3d 126, 133 (Pa. Super. 2018) (citation and quotation marks omitted).

**Younkin-Tomasek Tapes**

We first consider the Younkin-Tomasek tapes. Upon review of the record, it is clear that Appellant's trial counsel was aware of, and well-versed in, numerous tapes of Younkin's phone conversations, including conversations between Younkin and Tomasek, at the time of Appellant's trial.[7]

Specifically, during a mid-trial hearing on Younkin's charge of conspiracy, during which Appellant's counsel and Appellant were present but the jury was not, Huey testified that Younkin stated that the state police were taping his phone conversations, and Younkin was "concerned about the conversations that he had had with [Tomasek]." N.T., 8/13/1981, at 99-100. At the conclusion of this hearing, Appellant's counsel asked the trial court to instruct the attorneys for the Commonwealth and Younkin to refrain from mentioning the tapes during Huey's testimony in front of the jury. **Id.** at 111. Both attorneys acknowledged that they did not intend to elicit any

---

[7] We note that trial counsel testified at Appellant's PCRA merits hearing that he did not recall any recordings or transcripts of recordings. N.T., 2/1/2018, at 18. However, because timeliness is jurisdictional and the exceptions must be pleaded and proved before a court may review the merits of any underlying claim, we need not reconcile counsel's inconsistent testimony decades later at a merits hearing that the PCRA court lacked jurisdiction to conduct.

information about the tapes at trial. *Id.* Nonetheless, on direct examination, Huey, unprompted, mentioned that Younkin was "still upset over the tapes[.]" *Id.* at 130.

A sidebar was immediately held. Appellant's counsel asked for a mistrial and severance from Younkin's case because he had specifically asked counsel not to mention the tapes because they were inadmissible against and prejudicial to Appellant. *Id.* at 131. Additionally, Younkin's counsel objected to the mention of the tapes, noting that "the newspaper prior to impaneling the jury ran articles regarding the tapes, their suppression, and the fact those tapes are most controversial in nature, most incriminating in nature." *Id.* at 130-31. Consequently, he also moved for a mistrial. *Id.* at 131. The trial court denied counsels' motions, and did not offer a curative instruction because at that point the jury had no idea what the passing reference to tapes meant. *Id.* at 131-32.

Appellant's claim that the Baranowski report, which was the culmination of Baranowski's investigation into Appellant's proposed PCRA claims, revealed that these phone conversations were purportedly also recorded by Younkin is of no moment. Regardless of whether Younkin recorded the conversations or the police tapped Younkin's phone to create the recordings, the fact remains that counsel and Appellant were aware, during Appellant's trial, of the Younkin-Tomasek tapes. A new source for the same information does not create a newly-discovered fact. ***See Lambert,***

*supra*. Additionally, because counsel was aware of the tapes and their prejudicial content at trial, we conclude that the governmental interference exception also fails to provide Appellant an avenue around the PCRA's time-bar. *See* 42 Pa.C.S. § 9545(b)(1)(i) (requiring, among other things, that "the failure to raise the claim previously was the result of interference by government officials").

## FBI Ballistics Report

We next consider the FBI ballistics report, but conclude Appellant has abandoned this argument on appeal. In his brief, Appellant briefly mentions the ballistics report within his constitutional argument against the time-bar, Appellant's Brief at 35, and discusses it as a basis for merits relief in his fifth claim, *id.* at 44-46, but does not argue it as a basis for any of the timeliness exceptions. Accordingly, this argument is waived. *See Commonwealth v. Puksar*, 951 A.2d 267, 293 (Pa. 2008) (holding claim waived where Puksar failed to make or develop his argument).

Even if not waived, Appellant failed to allege in his PCRA petition, brief in support, or amended PCRA petition, when he came into possession of the ballistics report. Moreover, because Appellant failed to plead when he discovered this report, he has likewise failed to prove that he filed the instant petition within 60 days of its discovery. 42 Pa.C.S. § 9545(b)(2). Therefore, Appellant's attempt to invoke the governmental interference exception in this regard also fails.

Further, even assuming that Appellant provided the report to Attorney Toprani within 60 days of its discovery, 42 Pa.C.S. § 9545(b)(2), Attorney Toprani's alleged abandonment and failure to file a petition based thereon does not turn this document into a newly-discovered fact.

Like the Younkin-Tomasek tapes, trial counsel was aware of the information contained in the report at the time of Appellant's trial. Specifically, FBI agent Gerald F. Wilkes performed the ballistics testing in this case and testified at trial as a firearms and ammunitions expert regarding his findings. Agent Wilkes testified that he examined a .45 caliber lead bullet, lead bullet fragment, a mutilated lead bullet fragment, and a .45 Colt caliber rifle. N.T., 8/17/1981, at 81. Agent Wilkes test-fired the submitted firearm and determined its characteristics. *Id.* at 82. Based on his examination, Agent Wilkes determined that the .45 caliber bullet lacked "sufficient microscopic characteristics for [him] to make identification." *Id.* As to the fragments, because of mutilation, he was "unable to determine whether or not that bullet was fired from this particular weapon." *Id.* In conclusion, he testified that he found no characteristics that were inconsistent with the characteristics of the firearm, and therefore "it could have been fired from this weapon[,]" *id.* at 83, but he "couldn't arrive at an opinion that the bullet was, in fact, fired from the weapon[.]" *Id.* at 90.

The ballistics report attached to Appellant's amended PCRA petition is wholly consistent with Agent Wilkes's testimony. ***See*** Amended PCRA

Petition, 5/16/2017, Attachment C. Therefore, the report is merely a new source for previously known facts, and cannot constitute a newly-discovered fact. **See Lambert, supra**.

**Huey's FBI Informant Timeline**

Finally, as to Huey's FBI informant timeline, Appellant explicitly states that he learned of this information in 2006. PCRA Petition, 10/6/2016, at 15. Whether Appellant wished to use this information as a basis for the newly-discovered fact exception or the governmental interference exception, he was required to file a petition based thereon within 60 days. **See** 42 Pa.C.S. § 9545(b)(2). His October 6, 2016 petition, filed a decade later, fails to satisfy that requirement. **See Commonwealth v. Brown**, 111 A.3d 171, 176 (Pa. Super. 2015) (citation omitted) ("[W]hen a PCRA petition is … entitled to one of the [timeliness] exceptions, but not filed within 60 days of the date that the claim could have been first brought, the [PCRA] court has no power to address the substantive merits of a petitioner's PCRA claims.").

Accordingly, we conclude that Appellant has failed to plead and prove a timeliness exception to the PCRA's time-bar with respect to all of his claims.

C.

Recognizing this possibility, Appellant also argued in his PCRA petition that the time-bar should not be considered jurisdictional, but if it is, it is unconstitutional as applied to him because he is innocent and the

Commonwealth allegedly withheld this evidence. PCRA Petition, 10/6/2016, at 16.

Appellant argues on appeal that the PCRA time-bar should be interpreted as a statute of limitations, and that the cases interpreting it as jurisdictional are erroneous. Appellant's Brief at 34 n.10. However, "our Supreme Court has stressed that [t]he PCRA's timeliness requirements are jurisdictional in nature and must be strictly construed[.]" *Leggett*, 16 A.3d at 1145 (citation and quotation marks omitted). Accordingly, insofar as this argument asks us to overrule prior panels of this Court or our Supreme Court, we cannot do that. *See Commonwealth v. Pepe*, 897 A.2d 463, 465 (Pa. Super. 2006).

Second, Appellant argues on appeal that "[a]pplying the PCRA time[-]bar in this matter as jurisdictional cannot withstand strict scrutiny" given the "*Brady* evidence related to [the] tape recordings" and the "FBI ballistics report[.]" Appellant's Brief at 35.

Our Court has previously rejected a claim that petitioners asserting actual innocence may overcome the PCRA's timeliness requirements. In *Commonwealth v. Brown*, 143 A.3d 418 (Pa. Super. 2016), Brown argued that it was unconstitutional to apply the PCRA's time-bar to a PCRA petition alleging a claim of actual innocence under *Brady*.

> To support this proposition, [Brown] cites to *McQuiggin v. Perkins*, [569 U.S. 383 (2013)], in which the United States Supreme Court held that petitioners who assert a convincing actual innocence claim may thereby invoke the miscarriage of

- 14 -

justice exception to overcome the federal *habeas corpus* statute of limitations. Our jurisprudence, however, has already deemed such decisions pertaining to federal *habeas corpus* law irrelevant to our construction of the timeliness provisions set forth in the PCRA. While **McQuiggin** represents a further development in federal *habeas corpus* law, … this change in federal law is irrelevant to the time restrictions of our PCRA. Because [Brown's] fourth PCRA is patently untimely, and he has not met his burden of establishing an exception to the PCRA's time-bar, the PCRA court … lacked jurisdiction to address the **Brady** claims he raised.

*Id.* at 420-21 (some citations omitted).

The same holds true for Appellant. His fourth petition is patently untimely, and he has failed to plead and prove an exception to the PCRA's time-bar. Accordingly, the PCRA court was without jurisdiction to review the merits of Appellant's **Brady** claims.

Thus, we conclude that the PCRA court's dismissal of Appellant's PCRA petition was proper and, accordingly, affirm the PCRA court's May 11, 2018 order.[8] Because neither the PCRA court nor this Court has jurisdiction to consider the merits of claims raised in an untimely PCRA petition, we do not reach Appellant's remaining issues.

Order affirmed.

---

[8] As noted *supra*, although the PCRA court dismissed Appellant's PCRA petition on the merits instead of its untimeliness, "we may affirm the decision of the [PCRA] court if there is any basis on the record to support the [PCRA] court's action[.]" **Wiley**, 966 A.2d at 1157 (citation omitted).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/26/2019