FILED
United States Court of Appeals
Tenth Circuit

October 10, 2019

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

RYAN DAVID BURKE,

     Petitioner - Appellant,

v.

ALFRED BIGELOW,

     Respondent - Appellee.

No. 18-4132
(D.C. No. 2:16-CV-00285-RJS)
(D. Utah)

_____

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]
_____

Before **TYMKOVICH**, Chief Judge, **BALDOCK** and **HARTZ**, Circuit Judges.
_____

Ryan David Burke, a Utah state prisoner, seeks a certificate of appealability

(COA) to challenge the district court's dismissal of his 28 U.S.C. § 2254 application for a

writ of habeas corpus and subsequent motion to alter or amend the judgment under

Fed. R. Civ. P. 59(e). We deny a COA and dismiss this matter.

## I. BACKGROUND

Burke attended a high school reunion with a friend he had known since middle

school. Burke left his car at the friend's house because the friend had agreed to give him

a ride to and from the reunion. But the friend decided to stay the night at the reunion

_____

[*] This order is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

venue, and in the early morning hours of September 16, 2007, Burke got a ride back to the friend's house with other acquaintances. When Burke arrived at the house, he told the friend's sister, who was babysitting the friend's four-year-old daughter, that he had been given permission to stay overnight. The sister (the child's aunt) told Burke that he could sleep on a couch in the basement.

While in the basement, Burke ordered several pornographic movies on cable television at 1:30, 3:00, 3:30, and 8:20 a.m., respectively. They were "on demand" movies and could therefore be fast-forwarded.

The child, who was sleeping with her aunt, got up in the middle of the night and went downstairs. She told a police investigator that Burke "had been watching a 'grownup movie' [that] included oral sex scenes," and when "it was night outside," he "forced her to touch his penis." Aplt. App., Vol. II at 330. Although she also described what may have been a scene in one of the movies—that she saw a ball drop on a person's head—she never explicitly tied the time of her abuse to any particular scene or movie. At trial, the investigator testified that the fourth "movie (ordered at 8:20 a.m.) had a scene with a man being struck on the head with a cane." *Id*.

Later that morning, Burke was told to leave. He took his friend's checkbook, "drove to a store and cashed three of the checks. The first check was time-stamped at 9:18 a.m." *Id*.

Burke was convicted by a jury of aggravated sexual abuse of a child, forcible sexual abuse, and dealing in material harmful to a minor. His convictions were affirmed on appeal, *see State v. Burke*, 256 P.3d 1102 (Utah Ct. App. 2011), and the Utah Supreme

2

Court denied certiorari review on September 28, 2011. Burke did not petition the United States Supreme Court.

On September 4, 2012, Burke—represented by new counsel—filed a state post-conviction petition in which he argued that he was denied effective assistance of counsel when trial counsel failed to investigate a potential alibi defense. The court agreed and vacated his convictions. The State appealed and the Utah Court of Appeals reversed. It concluded that trial counsel's performance did not fall below an objective standard of reasonableness "because the information counsel possessed at the time he decided not to further investigate the alibi indicated that the alibi pertained to only a fraction of the relevant time period and could have opened the door to the introduction of prejudicial evidence"—forgery charges that Burke's trial counsel successfully severed from the sexual offense charges. *Burke v. State*, 342 P.3d 299, 307 (Utah Ct. App. 2015). In other words, the court found there was no constitutional violation. The Utah Supreme Court denied certiorari review on May 13, 2015.

On April 8, 2016, Burke filed his application for habeas relief. As grounds, Burke argued that he "received ineffective assistance of counsel because Defense Counsel at the time of his trial failed to investigate a potential alibi defense. Mr. Burke could not have committed the crimes because he was at a gas station and grocery store at the time the [victim] testified the crimes occurred." Aplt. App., Vol. I at 11. "Further, current counsel has obtained a traffic engineering report showing that Mr. Burke could not have been at the residence at the times the [victim] testified the crimes occurred because he was many miles away." *Id*.

The State moved to dismiss Burke's application as untimely. In response, Burke argued that the statute of limitations did not begin to run until August 20, 2012, when he first discovered the factual predicate for his claim. Alternatively, he argued that because he was actually innocent, the limitation period did not apply. The district court rejected both arguments and granted the State's motion.

Burke promptly retained new counsel who filed a motion to alter or amend the judgment under Fed. R. Civ. P. 59(e). As grounds, Burke argued, for the first time, that instead of raising a manufactured claim that the factual predicate for his habeas claim was not discovered until August 2012, Burke's counsel should have confessed to egregious misconduct—that he miscalculated the filing deadline—and asked the court to toll the statute of limitations due to this extraordinary circumstance. The district court denied the motion because it was a new argument that Burke could have raised earlier. The court also denied Burke's request for a COA.

## II. LEGAL BACKGROUND

### A. Certificate of Appealability

To appeal, Burke must first obtain a COA. 28 U.S.C. § 2253(c)(1)(A); *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). To receive a COA, Burke must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Because the district court denied Burke's habeas application on procedural grounds, he must show (1) "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," and (2) "that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v.*

4

*McDaniel*, 529 U.S. 473, 484 (2000). "Each component of [this] showing is part of a threshold inquiry, and a court may find that it can dispose of the application in a fair and prompt manner if it proceeds first to resolve the issue whose answer is more apparent from the record and arguments." *Id*. at 485. The procedural issue is frequently the easier one to resolve. *See id*.

## B. The Statute of Limitations and Actual Innocence Exception

There is a one-year limitations period to file a § 2254 habeas application. *See* 28 U.S.C. § 2244(d)(1). The limitation period typically beings to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." § 2244(d)(1)(A).

Nonetheless, "a credible showing of actual innocence may allow a prisoner to pursue his constitutional claims . . . on the merits notwithstanding the existence of a procedural bar to relief," such as the statute of limitations. *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013). "This rule, or miscarriage of justice exception, is grounded in the equitable discretion of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons." *Id*. (internal quotation marks omitted).

However, "tenable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Id*. at 386 (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). "[T]he *Schlup* standard is demanding. The gateway should open only when a petition presents evidence of innocence so strong that a court cannot have confidence in

5

the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Id*. at 401 (internal quotation marks omitted).

In determining whether the petitioner has made the required showing, "the habeas court must consider all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." *House v. Bell*, 547 U.S. 518, 538 (2006) (internal quotation marks omitted).

## C. Rule 59(e)

"The purpose of a Rule 59(e) motion is to correct manifest errors of law or to present newly discovered evidence." *Monge v. RG Petro-Mach. (Grp.) Co.*, 701 F.3d 598, 611 (10th Cir. 2012) (brackets and internal quotation marks omitted). "Grounds for granting a Rule 59(e) motion include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Id*. (internal quotation marks omitted). A Rule 59(e) motion, however, "is not [the] appropriate [vehicle] to . . . advance arguments that could have been raised in prior briefing." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

## III. ANALYSIS

Burke does not challenge the district court's determination that the one-year statute of limitations expired on September 4, 2015, and therefore, his April 8, 2016 application was untimely. Also, Burke agrees the court correctly determined there was no merit to his argument that he did not discover the factual predicate for his habeas

6

claim until August 2012. *See* Aplt. Appl. for COA/Opening Br. at 19 ("[T]he district court swiftly, *and correctly,* rejected [counsel's] newly discovered evidence argument[.]" (emphasis added)). Instead, Burke maintains that he established his actual innocence for purposes of opening the gateway because based on the new evidence proffered in the state court post-conviction proceedings, no juror, acting reasonably, would have found him guilty beyond a reasonable doubt.

## A. The Actual Innocence Gateway Claim

Burke argued that a traffic engineer's report put him several miles away from the house when the offense occurred. To establish the purported alibi, Burke pointed to the child's police interview in which she said that a movie she watched with Burke showed a ball or object dropping on a man's head, and he attempted to tie a scene with a man being struck on the head with a cane in the final movie he ordered at 8:20 a.m. to the offense. He then cited an affidavit submitted in the state court post-conviction proceeding that established the "cane" scene "occurred at 34 minutes 7 seconds into the film," Aplt. App., Vol. II at 337 (internal quotation marks omitted), and argued that the child could not have seen the man being struck on the head until at 8:54 a.m. at the earliest. The final link in Burke's purported alibi was the traffic engineer's determination that it would have taken a minimum of twenty-seven minutes to get from the house to the store where he cashed the first check at 9:18 a.m. Therefore, Burke argued that because he would have to had left the house *before* 8:54 a.m. to cash the check at 9:18 a.m., he had an alibi.

The district court found that Burke's "purported alibi is no alibi at all because it does not cover the entire time of the sexual offense." *Id*. at 338 (internal quotation marks

7

omitted).  In light of the child's "statement that she was abused while oral-sex scenes were on—which applied to all the movies [Burke] ordered—'the possible alibi could only have exonerated [Burke] for acts committed after 8:20 a.m. at the earliest, leaving a more-than-six-hour window for [Burke] to have committed the sexual offenses." *Id*. (quoting *Burke*, 342 P.3d at 305) (emphasis omitted).  "And the trial evidence strongly suggested that the abuse, in fact, occurred *before* 8:20 a.m." *Id*.

More the point, the district court found that even if Burke "had a potential alibi defense, he has not shown that, if [the alibi evidence had been] presented at trial, no reasonable juror would find him guilty beyond a reasonable doubt." *Id*. at 339.  In other words, Burke failed to "establish that it would be unreasonable for any juror not to accept his view of the evidentiary underpinnings of his alleged alibi." *Id*.  Indeed, like the Utah Court of Appeals, the district court found that Burke "would face significant obstacles in presenting a believable alibi defense at a trial." *Id*. (citing *Burke*, 342 P.3d at 307).

First, the district court acknowledged that the child told the police that she saw a ball drop on a man's head.  But "[f]or [Burke's] alibi to have traction, he would need to convince jurors that [the child's] statement could refer *only* to the scene in the fourth movie in which a man was hit on the head with a bamboo stick or a cane." *Id*. (internal quotation marks omitted) (emphasis added).  To the contrary, "a reasonable juror could conclude that a ball —a round object—dropping on a man's head could not possibly refer to a movie scene where a man is hit in the head with a stick or cane—a long, straight object." *Id*.

8

Second, the district court noted that Burke "would have to present convincing evidence that the sexual abuse occurred *only* during the movie scene when a man is hit on the head with a cane." *Id*. (emphasis added). However, "because [the child] did not link the time of the abuse to any particular scene in any of the movies . . . a reasonable juror could conclude that the abuse could have occurred earlier in the morning while a different pornographic movie was playing." *Id*. (internal quotation marks omitted).

Third, the district court explained that Burke would have to argue that the fourth movie was not fast-forwarded. "But again, because a cable company representative testified that the movie could be fast-forwarded . . . reasonable jurors could disagree . . . and conclude that the movie scene where a man was hit on the head with a cane played earlier than 8:54 a.m. because it was fast-forwarded." *Id*. (internal quotation marks omitted).

Last, the district court observed that Burke would have to convince the jurors that he had to have left the house before 8:45 a.m. to reach the store in time to forge a check at 9:18 a.m. But even though the shortest drive time recorded by the traffic engineer was twenty-seven minutes, those "calculations assumed [among other things] that [Burke] drove [the] speed limit[], . . . [he] stopped at a[] . . . gas station for five-and-a-half minutes, and . . . took [nearly four] minutes to make his purchase at the grocery store," before cashing the first check at 9:18 a.m. *Id*. (brackets and internal quotation marks omitted). Again, the court found that although jurors could agree that Burke left the house before 8:54 a.m., jurors looking at the facts could also reasonably disagree and

9

conclude that Burke left later than 8:45 a.m. and still had time to get to the store to cash the first check at 9:18 a.m.

The district court concluded that "[b]ecause reasonable jurors could disagree with [Burke's] evidentiary view that he contends establishes an alibi defense, he has not shown that no reasonable juror would find him guilty beyond a reasonable doubt." *Id.* Stated otherwise, Burke's failure to "show[] that he is actually innocent," precludes him from "us[ing] the miscarriage-of-justice exception to the . . . period of limitation." *Id.*

As this discussion makes clear, Burke has failed to demonstrate that jurists of reason would find it debatable whether the district court was correct in its procedural ruling that his § 2254 application was time-barred.

We further reject Burke's argument that the court should have held an evidentiary hearing. Setting aside the fact that it is unclear whether Burke ever requested a hearing, the court considered all the evidence that Burke maintained demonstrated his actual innocence, and thus the court did not abuse its discretion by failing to conduct a hearing. *See Anderson v. Att'y Gen. of Kan.*, 425 F.3d 853, 858 (10th Cir. 2005) ("A district court's decision to grant or deny an evidentiary hearing in a habeas proceeding is reviewed for an abuse of discretion.").

## B. Denial of the Rule 59(e) Motion

After the district court granted the State's motion to dismiss, Burke's newly retained counsel filed a Rule 59(e) motion, which raised, for the first time, an argument that because habeas counsel missed the filing deadline, Burke received ineffective

10

assistance of counsel, or alternatively, counsel's mistake was an extraordinary circumstance that tolled the statute of limitation.

The district court recognized that a court may alter or amend a judgment only "if there is '(1) an intervening change in the controlling law, (2) new evidence previously unavailable, [or] (3) the need to correct clear error or prevent manifest injustice.'" Aplt. App., Vol. II at 366 (quoting *Servants of the Paraclete*, 204 F.3d at 1012). The court then found that none of those grounds were present; instead, Burke was improperly raising arguments that could have been, but were not, raised in response to the State's motion to dismiss.

Because it is clearly inappropriate to use a Rule 59(e) motion to advance a new argument that was previously available, *see Servants of the Paraclete*, 204 F.3d at 1012, Burke has failed to demonstrate that jurists of reason would find it debatable whether the district court was correct in denying his Rule 59(e) motion.

## IV. CONCLUSION

Burke had not shown that reasonable jurists could debate the correctness of the district court's denial of his § 2254 application and his Rule 59(e) motion. Thus, we deny his request for a COA and dismiss this matter.

Entered for the Court

Bobby R. Baldock
Circuit Judge

11