FILED
United States Court of Appeals
Tenth Circuit

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

October 20, 2022

**Christopher M. Wolpert**
**Clerk of Court**

_____

DAROLD NORMAN HINOJOS,

    Petitioner - Appellant,

v.

PEOPLE OF THE STATE OF
COLORADO; ATTORNEY GENERAL
STATE OF COLORADO,

    Respondents - Appellees.

No. 22-1001
(D.C. No. 1:21-CV-01333-LTB-GPG)
(D. Colo.)

_____

## ORDER DENYING CERTIFICATE OF APPEALABILITY[*]
_____

Before **PHILLIPS**, **McHUGH**, and **ROSSMAN**, Circuit Judges.
_____

Darold Hinojos, through counsel, requests a certificate of appealability (COA) to

appeal from the district court's decision denying his 28 U.S.C. § 2254 habeas application

and dismissing the action as untimely.  We deny a COA and dismiss this matter.

### BACKGROUND

A jury convicted Mr. Hinojos of manslaughter, second degree burglary, and felony

murder, and the state trial court sentenced him to life in prison.  Mr. Hinojos' Colorado

---

[*] This order is not binding precedent except under the doctrines of law of the case,
res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

convictions became final on June 20, 2016.  He is serving his term of imprisonment in state custody.

A prisoner has a one-year period to file federal habeas claims, *see* 28 U.S.C. § 2244(d)(1), but that period excludes time during which a state postconviction petition is pending, *see id.* § 2244(d)(2).  On May 2, 2017, Mr. Hinojos filed a postconviction motion under Colorado Rule of Criminal Procedure 35(c).  The Rule 35(c) motion was under consideration by the state courts until the Colorado Supreme Court denied a petition for certiorari review on May 18, 2020.

The time between June 20, 2016, and May 2, 2017, did not toll the running of the limitations period, so 315 days of the one-year period had elapsed when Mr. Hinojos filed his Rule 35(c) motion.  That meant that even though the limitations period was tolled while the Rule 35(c) motion was pending, Mr. Hinojos had only 50 days remaining—or until July 7, 2020—to file his federal habeas claims once the Colorado Supreme Court denied certiorari.[1]

Mr. Hinojos did not file his § 2254 application until May 14, 2021.[2]  The magistrate judge directed the State to file a pre-answer response regarding exhaustion,

---

[1] The magistrate judge's report and recommendation stated Mr. Hinojos' deadline was July 17, 2020.  This appears to be an error, because 50 days after May 18, 2020, was July 7, 2020.

[2] The § 2254 application asserted six grounds for relief:  (1) a speedy trial violation due to unconstitutional amendments to the complaint; (2) a double jeopardy violation through a defective mittimus; (3) a due process violation by admitting hearsay; (4) a due process violation by failing to suppress an out-of-court identification; (5) a violation of the right to counsel by failing to appoint alternative counsel upon request; and (6) reversible error by failing to appoint counsel in the Rule 35(c) proceeding.

2

timeliness, and procedural default, if it intended to rely on those defenses. The State's response identified one defense—that Mr. Hinojos filed his application after the one-year statutory deadline in § 2244(d)(1). In reply, Mr. Hinojos argued his application was timely, or in the alternative, he was entitled to equitable tolling based on the COVID-19 pandemic. He also invoked the actual-innocence exception to § 2244(d) discussed in *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013).

The magistrate judge rejected Mr. Hinojos' arguments and recommended the district court deny the application and dismiss the action as untimely. After Mr. Hinojos filed timely objections, the district court reviewed the matter de novo. Adopting the magistrate judge's recommendation, the district court denied the § 2254 application and dismissed the action as untimely. It further denied a COA.

## DISCUSSION

Mr. Hinojos must obtain a COA for this court to review the district court's denial of his § 2254 application and dismissal of the action. *See* 28 U.S.C. § 2253(c)(1)(A). To do so, he must make "a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). The district court decided Mr. Hinojos' § 2254 application on the procedural ground of timeliness. That means for a COA to issue in this case, he must show not only "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also "that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not

3

conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.*

Before this court, Mr. Hinojos does not argue his § 2254 application was timely. Instead, he contends the district court erred (1) in declining to apply equitable tolling, and (2) in rejecting his actual-innocence allegations as a gateway to allow consideration of his untimely claims. Having considered Mr. Hinojos' arguments, we conclude reasonable jurists would not debate whether the district court was correct in making the now-challenged rulings.

## I.    Equitable Tolling

"[Section] 2244(d) is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010). But "a [habeas] petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Id.* at 649 (internal quotation marks omitted). "Equitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs." *Yang v. Archuleta*, 525 F.3d 925, 929 (10th Cir. 2008) (internal quotation marks omitted). "An inmate bears a strong burden to show specific facts to support his claim of extraordinary circumstances and due diligence." *Id.* at 928 (brackets and internal quotation marks omitted).

Mr. Hinojos' deadline for filing his § 2254 application was July 7, 2020. As extraordinary circumstances, he pointed to the COVID-19 pandemic, which started in March 2020. Before the magistrate judge, he alleged his prison "went on quarantine

lockdown on April 6, 2020" and "[l]aw [l]ibrary privileges were suspended for the majority of the time from April 6, 2020 until the facility opened back up in July 2021." Aplt. App. at 28. "The facility was on total lock down and [he] had no ability to have visitors or move about the facility, especially the law library through the Spring of 2021." *Id.* He stated that "[he] was able to retain counsel and assist in preparing the Writ in the Fall of 2020 but his efforts were significantly affected because of his inability to correspond with anyone outside the State-run facility." *Id.* at 29. In his objections before the district court, he added that Colorado's governor "[e]ssentially shutter[ed] the State" starting in March 2020. *Id.* at 44.

We are sympathetic to Mr. Hinojos' situation, but he is not entitled to relief under applicable law. No reasonable jurist would debate whether Mr. Hinojos satisfied his "strong burden to show specific facts to support his claim of extraordinary circumstances." *Yang*, 525 F.3d at 929. We do not hold that restrictions resulting from the COVID-19 pandemic could never constitute an extraordinary circumstance. But Mr. Hinojos—who was represented by counsel here and in the district court—advanced only broad general assertions about pandemic restrictions at his facility. For example, he stated that the facility was on lockdown and he was unable to correspond with anyone outside the prison. He did not, however, identify specific facts to support these general assertions, such as by describing the terms of the prison's lockdown policies or by supplying any other facts explaining just how the prison restricted his ability to communicate, particularly with counsel, during the pandemic. In other cases where an inmate has not sufficiently shown specific facts to support his claim of extraordinary

5

circumstances, this court has declined to apply equitable tolling. *See Al-Yousif v. Trani*, 779 F.3d 1173, 1179-80 (10th Cir. 2015) (reversing application of equitable tolling because inmate did not adequately explain or support claim that attorney was misled by court document); *Miller v. Marr*, 141 F.3d 976, 978 (10th Cir. 1998) (rejecting equitable tolling for lack of specificity).

Nor would reasonable jurists debate whether Mr. Hinojos "allege[d] with specificity the steps he took to diligently pursue his federal claims." *Yang*, 525 F.3d at 930 (internal quotation marks omitted). He did not discuss what steps, if any, he took to pursue his federal claims between May 18 and July 7, the remainder of his limitations period. He also did not explain why he was able to contact and retain counsel in the fall of 2020, but not earlier, or why his § 2254 application was not filed until May 14, 2021, months after he retained counsel. *Cf. United States v. Gabaldon*, 522 F.3d 1121, 1126-27 (10th Cir. 2008) (where prison officials seized inmate's materials weeks before his filing deadline, inmate established diligence by describing in detail both the actions he took to prepare his motion during the limitation period and his efforts to retrieve the seized documents before his deadline, and by providing evidence in support).

## II.    Actual-Innocence Exception

"[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass" if his first § 2254 application otherwise would be impeded by the "expiration of the statute of limitations." *McQuiggin*, 569 U.S. at 386. But "[a] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the

6

new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* (internal quotation marks omitted).

"This standard requires courts to engage in a counterfactual analysis, determining whether a jury confronted with all the evidence now known would still have convicted the petitioner of the crime charged." *Taylor v. Powell*, 7 F.4th 920, 927 (10th Cir. 2021), *cert. denied*, 142 S. Ct. 2819 (2022). "An actual innocence claim must be based on more than the petitioner's speculations and conjectures. The gateway claim must be credible and requires new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* (internal quotation marks omitted). "To be 'new,' the evidence need only be evidence that was not considered by the fact-finder in the original proceedings." *Id.*

When the State invoked § 2244(d), Mr. Hinojos replied, "Applicant has filed the Writ of Habeas Corpus because he maintains his innocence and the Statute of Limitations does not apply to his innocence plea and review request. See *McQuiggin v. Perkins*, 569 US 383 (2013)." Aplt. App. at 29. Although Mr. Hinojos maintained his innocence, he gave no further information about actual innocence. The magistrate judge recommended declining to apply the actual-innocence gateway because Mr. Hinojos "fails to show that he is actually, factually innocent of the crimes he has been convicted of committing. He does not demonstrate it is more likely than not, in light of new evidence, that no reasonable juror would have found him guilty beyond a reasonable doubt." *Id.* at 41-42 (citation and internal quotation marks omitted).

Mr. Hinojos then filed his objections to the magistrate judge's report and recommendation. As to actual innocence, he stated only that he

> maintains his innocence in this matter as he was never identified as the person who caused the injuries leading to the death of the victim and on page 11 of the Petition, he explains how the identification of him was not correct and that identification caused him to be convicted of the crimes.

*Id.* at 47. The district court summarily concluded the recommendation was correct.

In light of Mr. Hinojos' conclusory and undeveloped assertions in both his reply before the magistrate judge and his objections before the district court, no reasonable jurist would debate the district court's decision not to allow him to pass through the actual-innocence gateway. Mr. Hinojos has not identified any new evidence to support his allegation. *See Taylor*, 7 F.4th at 927.[3] Nor did he engage in analysis that would allow the court to "determin[e] whether a jury confronted with all the evidence now known would still have convicted [him] of the crime charged." *Id.*

## CONCLUSION

We deny a COA and dismiss this matter.

Entered for the Court

Veronica S. Rossman
Circuit Judge

---

[3] Referring to pages 11 and 12 of the § 2254 application, Mr. Hinojos' combined opening brief and application for COA asserts that he "has provided new and important evidence and argument relating to a false identification of him that tainted the whole jury trial process." Aplt. Opening Br./Appl. for COA at 17. But neither the brief nor the cited pages of the § 2254 application identify any new evidence.